**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30255

_____

RAYMOND GASPARD, ET AL.,

Plaintiffs,

versus

OFFSHORE CRANE AND EQUIPMENT, INC.,
a Unit of Amclyde Engineered Products, Inc.,

Defendant;

SEACOR MARINE, INC.,

Defendant-Appellee,

ANGLO-AMERICAN INSURANCE
COMPANY, LIMITED,

Third Party Defendant-Appellee,

versus

CHEVRON, U.S.A., INC.,

Defendant-Third Party Plaintiff-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

February 25, 1997

Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Chevron appeals dismissals granted in favor of defendant Seacor Marine and third-party defendant Anglo-American Insurance. In order to resolve Chevron's appeals, we must scrutinize the meanings of two troublesome phrases in maritime contracts. First, we hold that the inclusion of the words "loading or unloading" in

the indemnification agreement between Chevron and Seacor requires Seacor to indemnify Chevron for damage caused by a platform crane that malfunctioned during unloading. Second, we conclude that the "causal operational relation" test does not apply when the parties to a protection and indemnity insurance policy omit the words "as owner"; the omission in this case means that Anglo-American Insurance Company was not entitled to summary judgment on Chevron's third-party claim that the policy covers vessel-related liability that is based on Chevron's negligence as a platform operator.

I.

Raymond Gaspard worked for Nabors Drilling Company as a roustabout. In September of 1993, he was performing drilling services on a Chevron oil platform in the Gulf of Mexico. As part of his duties, he boarded the M/V Long Island, a cargo vessel tied up next to the platform, to help unload drill pipe. He was to rig a sling from the arm of a crane located on the platform. While Mr. Gaspard was on the deck of the Long Island, the crane malfunctioned, its fastline broke, and the headache ball fell on him. He lost both of his legs in the accident.

Chevron had leased the Long Island from Seacor Marine. The blanket time charter agreement between Chevron and Seacor contained an indemnification provision that protected Chevron against

> all liabilities . . . for personal injury or death
> . . . arising out of or in any way directly or
> indirectly connected with the performance of
> service under this agreement or the . . . carrying
> of cargo [or] loading or unloading of cargo [or]
> loading or unloading of passengers . . . , and
> whether or not caused or contributed to by the

2

negligence, strict liability or fault of Charterer
. . . .

The contract also required Seacor to purchase protection and indemnity insurance and to name Chevron as an additional insured. Ordinarily, such policies limit the lessor's coverage to damages incurred "as owner of the vessel." According to the contract, however, the policy purchased by Seacor would omit such language. Seacor purchased the required policy from Anglo-American Insurance Company. According to the policy, "[t]he so-called Other than Owner, as Owner and/or Other Insurance Clauses contained in this Policy shall be deemed deleted as may be required by contract." Anglo-American agreed to cover personal injuries, "[h]owsoever caused and occurring during the period of this Policy, arising out of, or having relation to the Assured's chartering, brokering, towing, berthing, servicing, operating, maintenance and/or use of vessels (including loading and/or unloading)."

Mr. Gaspard filed suit in Louisiana state court against a variety of defendants, including Seacor and Chevron. The petition alleged that the platform crane "constitute[d] a 'ruin' caused by vices in its construction, and improper design, and/or failure to repair it, all within the meaning of La. Code Civ. Art. 2322 so as to make defendant, Chevron, responsible for the loss . . . ." The record shows and the parties agree that any negligence occurred in the course of operating the platform crane and did not take place on board the Long Island. The defendants removed the case to federal court. Chevron filed a cross-claim against Seacor for contribution, indemnity, costs, and fees. Chevron also filed a

3

third-party complaint against Anglo-American to establish coverage under the protection and indemnity policy.

On March 31, 1995, the district court denied Chevron's motion for partial summary judgment against Seacor. The court held that the time charter agreement did not obligate Seacor to indemnify Chevron for injuries caused by a platform crane while the Long Island was being unloaded. Three weeks later, the court dismissed all claims against Seacor. On February 14, 1996, the court granted summary judgment to Anglo-American. The court's order explained that the omission of the "as owner" clause from Anglo-American's insurance policy did not extend Anglo-American's coverage to Chevron's operation of the platform crane.

In March of 1996, Mr. Gaspard settled with Chevron and the other defendants. Chevron agreed to pay Gaspard $100,000. Because they had already been dismissed, Seacor and Anglo-American did not participate in the settlement. Chevron appeals both the district court's March, 1995, ruling that the time charter agreement does not require Seacor to indemnify Chevron and also the court's February, 1996, ruling that the Anglo-American insurance policy does not cover Chevron's liability.

## II.

We begin by asking whether the inclusion of the words "loading or unloading" in Seacor's indemnification agreement makes Seacor liable for Mr. Gaspard's injuries. The district court's denial of Chevron's motion for partial summary judgment is subject to review de novo. Chevron argues simply that the indemnification provision

4

included injuries arising out of the unloading of cargo from the Long Island, even if Chevron was negligent. We agree with Chevron that the agreement's language is broad enough and explicit enough to encompass liability for injuries such as the one sustained by Mr. Gaspard.

Seacor prevailed below by convincing the court to apply the rule that even broadly worded indemnification clauses that refer to claims "directly or indirectly connected with the possession, management, navigation, and operation" of a vessel are insufficient to create a duty to indemnify for injuries caused by a platform crane during unloading. In Lanasse v. Travelers Ins. Co., 450 F.2d 580 (5th Cir. 1971), cert. denied, 406 U.S. 921 (1972), we confronted remarkably similar facts and a similarly expansive indemnification agreement. A crew member aboard a utility tender was nearly crushed to death when the operator of a Chevron platform crane negligently allowed a welding machine to swing against the vessel's railing. We held that the vessel owner's promise to indemnify did not contemplate injuries caused by the negligent acts of a platform crane operator during unloading. "As broad as those terms are to comprehend injuries caused by the operation of the vessel in a practical sense, they do not comprehend an occurrence in which the vessel's sole contribution is to be there as the carrier from which the cargo is being removed." Id. at 583. Accord Smith v. Tenneco Oil Co., 803 F.2d 1386, 1388-89 (5th Cir. 1986) (holding that indemnification for any claim that "arises out of or is incident to performance" of a time charter agreement does

5

not apply to liability for a platform crane operator's negligence in lowering a worker to the vessel's deck); Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238, 1241 (5th Cir. 1980).

The district court reasoned that the plain language in the indemnity agreement in this case is already broad enough to include activities such as unloading cargo; therefore, specifically adding "loading or unloading cargo" to the indemnity agreement does not add anything new. On this view, if the broadest possible provisions, such as the ones in Lanasse, do not apply when the negligence is due to a platform crane, then these provisions cannot apply here, in spite of their explicit reference to unloading.

Chevron encouraged the court to follow Clement v. Marathon Oil Co., 724 F. Supp. 431 (E.D. La. 1989). In Clement, an empty personnel basket struck an engineer while it was being lowered to the deck of a chartered vessel from a platform crane. As in this case, the time-charter indemnity agreement specifically referred to "loading and unloading." The court distinguished the Lanasse line of cases and held that the owner of the vessel had a duty to indemnify the charterer. Id. at 434. Cf. Lavergne v. Chevron U.S.A., 782 F. Supp. 1163, 1171 (W.D. La. 1991) (distinguishing Clement because "[t]here is no reference to Chevron being indemnified against its own fault in the charter agreement, nor does indemnification extend to loading and unloading operations"), aff'd, 980 F.2d 1444 (5th Cir. 1992) (mem.). But Chevron's invocation of Clement in this case failed to persuade the district court, which explained that the phrase "loading or unloading" is

6

merely "a redundancy that does not broaden the scope of the clause."

In our view, the inclusion of "loading or unloading" worked a definite change in the scope of the indemnity arrangement. According to the district court's reasoning, it does not matter that the contract says explicitly that Chevron's negligence in unloading the vessel will trigger the indemnification clause; so long as the contract includes indemnification for liability "arising out of or in any way directly or indirectly connected with the performance" of the contract, the <u>Lanasse</u> line of cases precludes indemnification for injuries caused by a platform crane. But denying indemnity here would make it impossible for parties to a time charter contract to agree that the owner will indemnify the charterer for any liabilities caused by the owner's negligence in the course of loading or unloading the vessel.

The district court's syllogistic logic misapprehends the spirit of the rule we announced in <u>Lanasse</u>. The question there was whether the expansive language agreed upon by the vessel owner and the charterer was explicit enough to allow the conclusion that the parties meant to cover events such as a crane operator's negligence in unloading the vessel. We concluded that "the operation of the crane was not even remotely related to the operation, navigation, or management of the vessel." 450 F.2d at 583. Cognizant of the principle that courts should construe indemnification agreements narrowly, we refused to adopt "the fullest meaning which lexicography would permit." <u>Id.</u> at 583-84 (quoting <u>Batson-Cook Co.</u>

7

v. Industrial Steel Erectors, 257 F.2d 410, 413 (5th Cir. 1958)). But the Lanasse court did not hold that more specific indemnification contracts must be construed to exclude damages caused by a platform crane during unloading. Nor did it hold that damages caused by a platform crane during unloading can never be subject to indemnification when the contract mimics the language in Lanasse by reciting that indemnification extends to any claim "arising out of or in any way directly or indirectly connected with the performance of service under this agreement." It merely held that indemnity for injuries caused by platform cranes during unloading requires "the plainly expressed intention of the parties, manifested by language couched in unmistakable terms." Id. at 584.

In response to Fifth Circuit case law, Chevron went out of its way to include "loading or unloading" in the indemnification agreement. It also went out of its way to state unambiguously that Chevron's own negligence would not stand in the way of indemnification. See Theriot v. Bay Drilling Corp., 783 F.2d 527, 540 (5th Cir. 1986) (holding that indemnification "'without regard to . . . the negligence of any party,' clearly and unequivocally provided Bay Drilling with indemnification for its own negligence"). The contract, then, said that if Chevron was negligent while unloading the Long Island, Seacor would have to provide indemnification. We decline the invitation to use Lanasse,

8

which contained a different indemnification agreement, to frustrate the calculated reference to "unloading" in this agreement.[1]

The indemnification agreement applies only to activities that have some relation to the Long Island. According to Seacor, Chevron's negligence had nothing to do with unloading the Long Island because the defects in the platform crane were general. Seacor contends that unless Chevron acted negligently specifically during the unloading operations, the indemnification agreement does not apply. Of course, we agree that the contract does not burden Seacor with liability for defects in the platform crane generally. But we disagree that the crane's failure was not "connected with the performance of service . . . [or the] loading or unloading of cargo" under the time charter agreement. Even if the platform crane malfunctioned because of long-term inattention to maintenance, the injury "arose out of" or was "directly or indirectly connected with" Chevron's use of the crane during unloading. The indemnification agreement is not limited to situations in which Chevron's negligence takes place on board the Long Island. Nor is it limited to breaches of care that could only cause harm during the platform's interaction with a cargo vessel. The fact that the crane could just as easily have caused an injury

---

[1] Chevron also argues that "loading or unloading" adds something to the more general "ownership, maintenance, management, operation," etc. language because the entire list is governed by the disjunctive "or." Both parties cite Black's Law Dictionary concerning the force of "or" as opposed to "and." These arguments are not helpful. The fact that elements in a list are disjunctive does not prevent one element from duplicating other elements in the list.

on the platform after the time charter agreement expired does not take this particular injury outside of the indemnification provision.

Vessel owners can continue to obtain the protection of <u>Lanasse</u> by making use of the broad indemnity language at issue in that case. But once a vessel owner explicitly agrees to indemnify a charterer for liabilities that arise from negligent unloading operations, it can no longer hide behind the rationale in <u>Lanasse</u> and its progeny. We approve of the <u>Clement</u> decision and hold that Seacor's agreement to indemnify Chevron embraces Chevron's liability for the negligent operation of its platform crane while unloading the Long Island. The district court erred when it denied Chevron's motion for summary judgment against Seacor.

### III.

We turn now to the question of whether Anglo-American's policy covers Chevron's liability. Again, we review <u>de novo</u> the district court's grant of summary judgment in favor of Anglo-American. Our case law has elucidated the meaning of an "as owner" clause in insurance policies that cover charterers' liability. Based on that case law, we hold that the omission of the "as owner" clause creates at least a genuine issue of material fact as to whether Anglo-American extended coverage to Chevron's actions as a platform operator. Because the policy could be construed to cover liability that arises from the negligent operation of the platform crane, we reverse Anglo-American's summary judgment.

10

Once again, Lanasse is the seminal case.  We concluded in Lanasse that Chevron caused the injury as a platform operator rather than as an "owner" of the chartered tender.  The protection and indemnity policy, however, covered Chevron only for liabilities incurred "as owner" of the tender.  Consequently, we affirmed the district court's judgment in favor of the insurer.  We held specifically that a policy that covers a charterer's liability incurred "as owner" of the chartered vessel does not provide coverage unless there is "some causal operational relation between the vessel and the resulting injury."  450 F.2d at 584.  "[W]here injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury."  Id.  Accord Randall v. Chevron U.S.A., 13 F.3d 888, 907-09 (5th Cir.), modified on other grounds, 22 F.3d 568 (5th Cir.), cert. dismissed, 115 S. Ct. 5, cert. denied, 115 S. Ct. 498 (1994); Stockstill v. Petty Ray Geophysical Div., 888 F.2d 1493, 1496-97 (5th Cir. 1989); Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co., 877 F.2d 1214, 1228 (5th Cir.), cert. denied, 110 S. Ct. 332 (1989).

If the policy had retained the "as owner" language, Anglo-American would have no responsibility to provide coverage for injuries caused by Chevron's actions as a platform operator.  But omitting the "as owner" language can make Lanasse's "causal operational relation" test inapplicable.  In Helaire v. Mobil Oil Co., 709 F.2d 1031, 1041-42 (5th Cir. 1983), we held that omitting the words "as owner" can expand coverage to include injuries inflicted as a platform operator rather than merely as the operator

11

of the vessel.  The plaintiff in Helaire was injured while attempting to unload casing onto a platform during bad weather.  We affirmed the district court's holding that the relevant protection and indemnity insurance covered the platform operator because the negligence pertained to operating the chartered vessel in spite of the high seas.  As an alternative holding, we pointed out that the parties had omitted the "as owner" clause from the policy, so there would be coverage even if the charterer's negligent conduct had not been "as owner" of the vessel:

> Moreover, even assuming that Mobil's liability may have arisen from its status as platform operator, indemnification was still properly awarded. . . . The words "as owner of the vessel named herein" were deleted from the policy.  The district court found that this deletion was intended to provide coverage for Mobil regardless of the capacity in which Mobil was sued.  Certainly this finding was not clearly erroneous. . . . Consequently, the court's indemnification order is proper regardless of whether Mobil incurred liability as a "vessel owner" or as a "platform operator."

709 F.2d at 1042 (footnote omitted).  See also Randall, 13 F.3d at 908 ("[W]e also noted [in Helaire] that the words 'as owner of the vessel' had been deleted from the policy, so the time charterer was entitled to coverage regardless of the capacity in which it was sued.").

Anglo-American's primary response to the Helaire opinion is simply to assert that its alternative holding is dicta.  But we are bound by Helaire's second rationale just as firmly as if it were the only reason offered by the Helaire court.  See Oncale v. Sundowner Offshore Services, Inc., 83 F.3d 118, 120 (5th Cir.

12

1996), petition for cert. filed, 65 U.S.L.W. 3432 (U.S. Dec. 16, 1996) (No. 96-568). In contrast to the procedural posture of Helaire, we do not have the benefit of a fact-finder's determination that the parties intended for the deletion to extend coverage to Chevron's vessel-related liabilities incurred as platform owner. But Helaire at least demonstrates that our law is consistent with Chevron's argument that we should construe the policy to cover Mr. Gaspard's injury. Its very existence means that there is at least a genuine issue of material fact as to whether Chevron's interpretation is accurate.[2]

Anglo-American also argues that Helaire conflicts with McMoRan. But McMoRan concerned an indemnity provision in which the vessel owner agreed that "[a]ny language in the policies . . . which limits the coverage afforded to an assured who is not a shipowner or who is not entitled to the rights of limitation to which a shipowner is entitled shall be deleted." 877 F.2d at 1226. The McMoRan decision, then, dealt with a charterer who wanted to make sure merely that its coverage would be no less than what it would have been if it were the owner of the vessel. By contrast, Chevron in this case wanted to make sure that its coverage would

---

[2]If the contract is unambiguous, no question of fact remains, and Chevron is entitled to summary judgment on remand. Employers Ins. of Wausau v. Occidental Petroleum, 978 F.2d 1422, 1430 (5th Cir. 1992), cert. denied, 510 U.S. 813 (1993). Because the district court did not have occasion to rule on the question of the contract's ambiguity, we do not reach it. The Helaire Court, considering the effect of the deletion of an "as owner" clause as a matter of first impression, apparently concluded that the resulting policy retained ambiguities that required a factual inquiry into the parties' intentions. We leave it to the district court to decide whether this policy is similarly ambiguous.

13

not be limited to what it would have been if it were actually the owner of the vessel. Randall discussed both Helaire and McMoRan and found no conflict between them. See 13 F.3d at 908, 908-09.

The district court recognized that Anglo-American's policy would ordinarily be governed by Helaire rather than by the Lanasse line of cases. Its summary judgment in favor of Anglo-American was based on the policy's declaration that "if claim is made by anyone other than the owner and/or operator of the vessel(s) insured hereunder, such person or entity shall not be entitled to a broader scope of coverage than would the owner and/or operator had claim been made by the owners and/or operator as an Assured hereunder." The district judge analyzed this sentence to mean that "[i]f Chevron makes a claim as owner of the platform, as opposed to as owner/operator of the vessel, the clause still limits the scope of coverage to that otherwise available under the policy. The policy provides coverage for an accident arising from the use of one of Seacor's vessels." In other words, the court understood this sentence to accomplish the same thing that the "as owner" clause would have accomplished had it been included in the policy.

We disagree with the district court's reading of the policy. The sentence it relied on applies only if a party other than Seacor or Chevron, the owner and operator of the vessel respectively, were to bring a claim. In that event, coverage is limited to what Seacor or Chevron could have obtained under the policy. The language cited by the district court has no application to this litigation.

14

The Lanasse court's reasoning turned on the "as owner" clause in the policy involved in that case. As Helaire demonstrates, Lanasse's "causal operational relation" test does not necessarily apply when the parties omit this clause from a protection and indemnity policy. When Chevron went out of its way to omit the clause, and when Anglo-American consented to including Chevron as an additional insured without limiting coverage to Chevron's liabilities sustained "as owner" of the Long Island, the parties created a protection and indemnity policy that could be interpreted to extend coverage to Chevron's vessel-related negligence committed as platform operator.

IV.

We hold that the indemnification agreement required Seacor to indemnify Chevron for its liability to Mr. Gaspard. Consequently, the district court erred when it denied Chevron's motion for summary judgment against Seacor. On remand, the district court must calculate the damages Seacor owes to Chevron.

The district court also erred when it granted summary judgment in favor of Anglo-American. The deletion of the "as owner" clause created at least a genuine issue of material fact as to whether Anglo-American's policy covered vessel-related liabilities involving Chevron's negligence in its capacity as a platform operator. Because of the procedural posture of the case, the district court still has the task of deciding in the light of our opinion whether Chevron should prevail in its third-party claim against Anglo-American.

REVERSED AND REMANDED.