_[¿WEIMER, Judge.
C & E Boat Rental, Inc. (C & E) appeals a judgment the trial court rendered denying its motion for summary judgment and granting the motion for summary judgment filed by Chevron U.S.A. Inc. (Chevron). The judgment requires C & E to defend and indemnify Chevron from any liability arising from personal injuries allegedly incurred by Howard A. Lefort.[1] Our review of the record reveals Chevron is entitled to judgment as a matter of law, and we affirm the well-reasoned judgment of the trial court.
BACKGROUND
Howard Lefort was a captain employed by C & E on the MTV Rusty Eymard on December 12, 1994. On December 11, 1990, Chevron and C & E entered into a Blanket Time Charter, and the Rusty Ey-mard was assigned to the exclusive use of Chevron during the month of December 1994. Capt. Lefort filed suit against C & E and Chevron for injuries he allegedly received on board that vessel while he was inspecting the vessel’s stern deck.
The record reveals that on the date of the accident, the Rusty Eymard was ordered to proceed to Chevron’s Grand Isle 26 Papa Structure (Papa Structure), a fixed offshore platform located in federal waters of the Gulf of Mexico. Capt. Lefort moored the vessel to a part of the platform routinely used for mooring vessels and equipped with mooring bitts and a landing with a swing rope to effect the transfer of personnel between the platform and vessels. There were no signs to warn Capt. Lefort that he was mooring the Rusty Eymard under an oil discharge vent on the platform, which vent was not visible from the vessel.
While the Rusty Eymard was moored at the platform, a large quantity of oil escaped from the discharge vent and covered the back deck and cabin of the vessel. [3When Capt. Lefort stepped out of the cabin door onto the back deck for the purpose of inspecting the vessel, he allegedly slipped in the oil and was injured.
In its answer to the Lefort petition, C & E asserted that any injuries to Capt. Le-fort were caused by his own negligence. *361 Chevron filed a cross-claim against C & E for contractual indemnity and defense pursuant to the Time Charter provision concerning indemnification. Thereafter, both C & E and Chevron filed motions for summary judgment addressing Chevron’s claim for contractual indemnity against C & E.
After the trial court’s rulings in favor of Chevron, C & E perfected this appeal. According to C & E, “the sole issue ... is whether ... C & E ... agreed in ‘language couched in unmistakable terms’ to defend and indemnify Chevron for liability Chevron may incur here for negligently spilling oil from its fixed platform onto C & E’s vessel.”[2]
DISCUSSION
Central to the indemnity issue is the following language of the Time Charter between the “Owner” (C & E) and the “Charterer” (Chevron):
INDEMNITIES: Notwithstanding anything elsewhere contained in this charter, Owner hereby agrees to fully indemnify and hold Charterer and Charterer’s co-venturers, co-operators and partners forever harmless, and to undertake to defend Charterer and Charterers’ [sic] co-venturers, co-operators and partners, of and from any and all liabilities, losses, damages, and costs, of whatsoever nature or kind, for personal injury or death, or for damage to the property of third parties, or for damage to h Charterer’s and Charterer’s co-venturers[’], co-operators[’] and partners’ property, arising out of or in anyway directly or indirectly connected with the use of the vessel by Charterer and Charterer’s co-venturers, co-operators and partners or the ownership, maintenance, management, operation, transportation of passengers, carrying of cargo, loading or unloading of cargo, loading or unloading of passengers or navigation of the vessel, and whether or not caused or contributed to by the negligence, strict liability or fault of Charterer or Charterer’s co-venturers, co-operators and partners, or of any person or party for whose acts Charterer and Charterer’s co-venturers, co-operators and partners is [sic] or may be liable. Owner’s liability under this section shall be limited to the applicable insurance which Owner carries or has others carry or $5,000,000, whichever is greater.
*362 In their briefs to this court, both parties rely on Gaspard v. Offshore Crane and Equipment, Inc., 106 F.3d 1232, 1235 (5th Cir.1997), cert. denied, 522 U.S. 1047, 118 S.Ct. 691, 139 L.Ed.2d 636 (1998), a case in which the appellate court held that broadly worded indemnification clauses referring to claims directly or indirectly connected with the possession, management, navigation, and operation of a vessel are sufficient to create a duty to indemnify for injuries caused by a platform crane during an unloading operation. Chevron states the indemnity agreement in the instant case is “very similar” and C & E states it is “virtually identical” to the agreement at issue in Gaspard. We agree. However, the parties’ readings of Gaspard sail divergent waterways.
Although we are not ordinarily bound by federal court holdings, our own reading of Gaspard and the numerous cases considered therein suggests the federal courts are striving to provide contracting parties in the offshore marine industry with guidance in formulating their indemnification rights and obligations. Thus, we take up this laudable pursuit in construing this maritime contract. See Theriot v. Bay Drilling Corporation, 783 F.2d 527, 538 (5th Cir.1986) (district court erred in construing indemnity provision under state law because construction of a maritime contract is governed by maritime law). See also, Cason v. Diamond M Drilling Company, 436 So.2d 1245, 1253 (La.App. 1 Cir.), units denied, 441 So.2d 1221 (1983) (because a [smaritime contract was involved, the admiralty law affecting indemnity contracts as applied by courts in the United States applied).
Well established general principles of interpreting indemnity agreements require that indemnification for an indem-nitee’s own negligence be clearly and unequivocally expressed. Theriot, 783 F.2d at 540. An indemnity provision should be construed to cover all liabilities which reasonably appear to have been within the contemplation of the parties. However, an indemnity provision should not be read to impose liability for losses which are not expressly within its terms or are not of such a character that it can be reasonably inferred the parties intended to include them within the indemnity coverage. Id.
In Gaspard, the plaintiff was injured while on board a vessel owned by Seacor Marine when a platform crane’s line failed, causing the headache ball to fall onto the vessel deck. The record showed that any negligence occurred in the course of operating the platform crane and did not take place on board the chartered vessel. The appellate court held that the inclusion of the words “loading or unloading” in the indemnification agreement between Chevron and Seacor Marine required the latter to indemnify Chevron despite the fact the damage was caused by the platform crane.
Reconciling two lines of cases without rejecting either, the court in Gaspard clearly holds the language of the indemnity agreement is determinative, not the location of the injury-causing instrumentality on a platform instead of on a vessel. Citing the language in Theriot, 783 F.2d at 540, the court noted that in response to Fifth Circuit case law, Chevron “went out of its way” to include “loading or unloading” in the indemnification agreement and to state unambiguously that Chevron would be indemnified for its own negligence. Gaspard, 106 F.3d at 1236. Additionally, the court approved of Clement v. Marathon Oil Co., 724 F.Supp. 431, 434 (E.D.La.1989) (indemnity agreement that specifically referred to “loading and unloading” provided indemnity when an empty personnel basket struck an engineer while it was Rbeing lowered to the deck of a chartered vessel from a platform crane). *363 Id. Cf. Lavergne v. Chevron U.S.A., Inc., 782 F.Supp. 1163, 1171 (W.D.La.1991) (no reference in the agreement for Chevron to be indemnified against its own fault, and agreement did not extend to loading and unloading operations).
In Gaspard, the court distinguished the use of Lanasse v. Travelers Insurance Company, 450 F.2d 580 (5th Cir.1971), cert. denied, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972) (crew member aboard vessel was crushed when operator of a platform crane lost control of a welding machine; indemnify agreement did not contemplate this type of injury caused during unloading).[3] The Gaspard court pointed out vessel owners could continue to obtain the protection of the Lanasse line of cases by making use of broad indemnity language; however, if the vessel owner explicitly agreed to indemnify a charterer for liabilities arising from negligent unloading operations, it was so obligated. Gaspard, 106 F.3d at 1236-1237.
In the instant case, we confine our analysis to a determination of whether C & E, as owner, must indemnify and defend Chevron, as charterer, pursuant to the language of the Time Charter, specifically: that Owner will indemnify and defend Charterer from “any and all liabilities ... for personal injury ... arising out of or in anyway directly or indirectly connected with the use of the vessel by Charterer ... or the ... navigation of the vessel, and whether or not caused or contributed to by the negligence, strict liability or fault” of Chevron.
We find it immaterial that the oil spill onto the deck of the Rusty Eymard may have been caused by the malfunction of some instrumentality located on Chevron’s platform, or by a negligent act on the platform, because the Rusty Eymard was being used by Chevron at the time of the oil spill. The indemnification agreement is not limited to situations in which Chevron’s negligence takes place on board the Rusty Eymard. See Gaspard, 106 F.3d at 1236. Capt. Lefort testified at his deposition that |7he navigated the vessel to the Papa Structure on orders from Chevron; the vessel was moored there on orders from Chevron; eventually, it was dispatched from there on orders from Chevron. Thus, the vessel was in continuous use by Chevron on the day of the accident at all times preceding the accident. The fact that the vessel was moored and not traveling over the water at the time of the oil spill did not remove it from Chevron’s use and did not take the vessel out of navigation. If we focus on the oil spill instead of the alleged slip and fall, we must conclude that the liability of Chevron, if any, arose out of and was directly or indirectly connected with Chevron’s use of the vessel and the navigation of the vessel for Chevron.
Further, Capt. Lefort testified that prior to the fall he left the cabin and walked onto the deck for the purpose of making a routine inspection of the vessel. The alleged accident occurred while the captain of the vessel was performing an act that was part of the normal procedure of “navigation” of the vessel on behalf of the charterer, Chevron. If we focus on the slip and fall, instead of the oil spill, we must conclude that the liability of Chevron, if any, arose out of and was directly connected with navigation of the vessel for Chevron.[4]
*364 Pursuant to either focus of our analysis, the agreement by C & E to indemnify and defend Chevron obligates C & E under the undisputed facts at this stage of the case. As previously noted, C & E could have availed itself of an indemnity agreement that did not encompass explicit language binding itself to indemnify and defend in situations involving the strict liability and/or negligence of the platform owner which was also the charterer. However, having entered into such an agreement, C & E is bound thereby and is presumed to have consented to its contents. See Sonnier v. Boudreaux, 95-2127, p. 7 (La.App. 1 Cir 5/10/96), 673 So.2d 713, 717. Although the law does not compel IsParties to inform themselves of the contents of instruments which they may choose to sign, except in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights. Signatures to obligations are not mere ornaments, and it is incumbent upon the party signing such obligation to examine it before signing it in ignorance of its contents. Id., citing Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983).
Finally, there are many factual matters that must be determined on the merits. However, they are not material to the issue of whether Chevron is entitled to indemnity and a defense as a matter of law. C & E’s argument to the contrary is without merit.
CONCLUSION
We affirm the judgment of the trial court denying the motion for summary judgment filed by C & E Boat Rental, Inc. and granting the motion for summary judgment filed by Chevron U.S.A., Inc. We assess C & E Boat Rental, Inc. with all costs of this appeal.
AFFIRMED.

. Other plaintiffs in the personal injury lawsuit are Mr. Lefort's wife, Lauren, and children, Joshua Paul and Kacie Lynn.

. This issue statement capsules C & E's assignments of error, which are as follows:
1. The district court erred as a matter of law by holding that the cause of the plaintiff’s accident was not relevant to determining Chevron's right to indemnity; established caselaw interpreting similar indemnity language holds that the cause of the accident, and, more particularly, the Chevron activity that allegedly caused the accident and gave rise to Chevron’s liability, is determinative of whether Chevron is entitled to a defense and indemnity. Because it utilized an improper analysis, the district court reached an incorrect result.
2. The district court erred as a matter of law in holding that Chevron was entitled to a defense and indemnity from C & E, where;
a. The only activity for which Chevron could be liable to this plaintiff arose in its capacity as platform owner for negligently discharging oil from its platform onto the M/V RUSTY EYMARD;
b. There were no allegations or evidence that Chevron breached any of its legal or contractual duties as time charterer of the M/V RUSTY EYMARD; and
c. Chevron’s potential liability as platform owner for negligently discharging oil from its platform onto the M/V RUSTY EYMARD did not arise out of Chevron’s use or operation of the M/V RUSTY EYMARD, or any of the other activities enumerated in the charter party, as a matter of established law. 3. At minimum, the district court erred in granting Chevron indemnity, because there remain disputed issues of fact relating to Chevron’s right to contractual indemnity.

. Accord, Smith v. Tenneco Oil Co., Inc., 803 F.2d 1386, 1388-89 (5th Cir.1986); Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238, 1241 (5th Cir.1980).

. As our learned collegue below stated in his reasons for judgment:
The depositions on file prove that Mr. Lefort’s slip occurred during his inspection *364 of the vessel to determine whether the vessel was seaworthy. It is this court’s opinion that Mr. Lefort's inspection is a use specified in the indemnity agreement. Mr. Lefort’s inspection was a concomitant function of the maintenance and operation of the vessel.