**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————————

No. 01-31254

(Summary Calendar)

—————————

DELTA SEABOARD WELL SERVICE; ET AL,

Plaintiffs,

DELTA SEABOARD WELL SERVICE INC,

Plaintiff-Appellant,

versus

STEADFAST INSURANCE CO; ET AL,

Defendants,

WATER QUALITY INSURANCE SYNDICATE,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana
No. 99-CV-2319

July 11, 2002

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM*:

Delta Seaboard ("Delta") appeals the summary judgment granted by the district court in favor of its insurer, the Water Quality Insurance Syndicate (WQIS).

Delta performed plugging and abandoning (P & A) operations on an oil well located on Lake Henderson in Louisiana. As part of these operations, Delta used the MOP 141, a keyway barge which it owned, operated, and manned. Delta also used as part of these operations the MOP 22 and the MOP 25, two unmanned deck barges which it bareboat chartered. During the P & A operations, petroleum and other hydrocarbons were recovered and stored aboard the MOP 22 by the crew of the MOP 141, at the direction of the MOP 141's tool pusher, Alvin Miller. After the operations were completed, Miller ordered the crew of the MOP 141 to burn off some metal protrusions on the deck of the MOP 25. The protrusions were a tripping hazard. The MOP 25 was tied between the MOP 141 and the MOP 22 at the time of the welding. Sparks from the welding on the MOP 25 traveled downwind and ignited the petroleum stored on the MOP 22. As a consequence of the resulting explosion, the MOP 22 spilled oil and other hydrocarbons into the lake. The clean-up costs for the spill amounted to about $100,000.

WQIS issued a pollution liability insurance policy for Delta. The policy, within certain limitations, covers costs incurred by Delta from spilling oil or other chemicals. The policy covers only those costs incurred by Delta "as owner or operator of the vessel named on the Vessel Schedule attached to and forming part of this policy." The MOP 141 was a vessel named on the Vessel Schedule, but the MOP 22, from which the spill issued, and the MOP 25, from which the sparks

*Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-2-

originated, were not. WQIS denied coverage for the spill costs on the grounds that such costs were incurred by Delta "as owner or operator" of the unscheduled vessels, not the scheduled MOP 141. Delta filed suit against WQIS in Louisiana state court to recover on the policy. The case was removed to federal court on diversity grounds.

On cross motions for summary judgment, the district court concluded, without any detailed written opinion and without setting forth findings of fact or conclusions of law,[1] that the spill from the MOP 22 was within the scope of the WQIS policy. The district court nevertheless concluded that, under the subrogation clause in the policy, WQIS had no obligation to pay any of the costs of the spill. Delta appeals.

We have on a number of occasions considered the meaning of the phrase "as owner" in marine insurance contracts.[2] The test is whether there is a "causal operational relation" between the vessel and the incident that gave rise to liability. *Gaspard v. Offshore Crane & Equip., Inc.*, 106 F.3d 1232, 1237 (5th Cir. 1997); *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 907-09 (5th Cir. 1994), *modified on other grounds*, 22 F.3d 568 (5th Cir. 1994), *overruled on other grounds*, *Bienvenu v. Texaco, Inc.*, 164 F.3d 901 (5th Cir. 1999); *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1972). The leading case is *Lanasse*, in which a crane on a fixed platform was moving a welding machine off of a vessel. Chevron operated both the platform and the vessel. Due to the negligence

---

[1]Delta argues that the district court erred under FED. R. CIV. P. 52(a) in failing to issue findings of fact and conclusions of law. FED. R. CIV. P. 52(a) explicitly states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Because the district court's decision was on a motion for summary judgment under Rule 56, findings of fact and conclusions of law were not required.

[2]We have considered this issue mostly in the context of Protection & Indemnity (P & I) policies, but we see no reason to treat a pollution liability policy differently.

-3-

of the crane operator, Lanasse was injured on the deck of the vessel while helping to offload the machine. The court held that Chevron was liable in its capacity as owner of the *platform*, not in its capacity "as owner" of the vessel within the meaning of its insurance policy. The vessel was just the "inert locale" of the injury; nothing about its operation, maintenance, movement or seaworthiness gave rise to the incident.

The court in *Lanasse* acknowledged that "line may be a wavy one between coverage and noncoverage." Similarly, we have explained that the "causal operational relation" test sometimes "does little to clarify the meaning of the phrase 'as owner.'" *Randall*, 13 F.3d at 907. But whatever the limits of the test, in this case the incident was clearly caused, not by the operation of the MOP 141, but of the MOP 25 and the MOP 22. The only relationship the MOP 141 has to the incident is that its crew was involved with the welding on the MOP 25 that caused the explosion. But the crew of the MOP 141 was not performing any functions relating to the operation of the MOP 141. They were not maintaining, steering, navigating, repairing or otherwise doing anything with respect to the covered vessel. Here, the sole reason for the welding was to burn off metal protrusions on the deck of the MOP 25 that posed a tripping hazard. The crewmen were not "maintaining" or "operating" the MOP 141, they were maintaining the MOP 25. The sparks here were caused as part of the operation of the MOP 25, and the spill came from the MOP 22. The accident did not involve the operation of the MOP 141 at all.

All of the liability provisions of the policy extend only to amounts that Delta incurs "as owner or operator" of the MOP 141. Because the incident here was not caused by Delta in its capacity as owner or operator of the MOP 141, none of these provisions provide coverage. We therefore AFFIRM the summary judgment in favor of WQIS.