833 So.2d 544 (2002)
FEDERATED RURAL ELECTRIC INSURANCE CORPORATION
v.
GULF SOUTH CABLE INC.
No. 02-852.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
Robert R. McBride, Lafayette, LA, for Plaintiff/Appellant: Federated Rural Electric Insurance Corporation.
Thomas L. Gaudry, Jr., Gretna, LA, for Defendant/Appellee: Gulf South Cable, Inc.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, and MARC T. AMY, Judges.
WOODARD, Judge.
In an underlying suit, Federated Rural Electric Insurance Corporation (Federated) defended its insured, Dixie Electric Membership Corporation (Dixie), and settled all claims for $125,000.00. Based on an indemnity agreement between Dixie and Gulf South Cable, Inc., (Gulf South), Federated filed an indemnity claim against Gulf South. Gulf South moved for summary judgment, which the trial court granted. Federated appeals. We reverse.

* * *
On May 27, 1994, while working at a residential construction site located at *545 19129 Lod Stafford Road in Livingston, Louisiana, Mr. Joseph Jones was electrocuted. A hydraulic boom attached to his truck made contact with an electrical transmission line, which Dixie owned.
On May 25, 1995, Mr. Jones' surviving heirs filed a survival action and wrongful death suit, alleging that Dixie and Mr. Mark Smith, the property owner, as well as their respective insurers, were liable for Mr. Jones' wrongful death under the theories of strict liability and negligence.
After reviewing Professor Nethken's testimony and evaluating the liability exposure before a jury, Federated, Dixie's general insurer, settled all claims for $125,000.00 plus court costs. On March 23, 1999, Federated filed a Petition for Indemnity against Gulf South, alleging subrogation to Dixie's right to recover the amount paid to the Jones heirs, attorney's fees, expert fees, and court costs. In response, Gulf South filed a Dilatory Exception of Vagueness or Ambiguity, which the trial court granted. Federated followed with a supplemental and amending petition for indemnity, alleging that Gulf South was responsible for Mr. Jones' death because it installed a television cable line 3.2 feet below the neutral line on the dead-end pole and 1.8 feet below the neutral line at the take off pole, in violation of Gulf South and Dixie's agreement. Subsequently, Gulf South moved for summary judgment, alleging that it did not owe indemnity to Federated because it neither caused nor contributed to the accident. The trial court granted summary judgment.
* * *

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.[1] Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966 charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, its supporting documentation must be sufficient to establish that no genuine issue of material fact remains to be decided.[3] Once the mover makes a prima facie showing that there is no genuine issue regarding a material fact and that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In summary, in reviewing a trial court's summary judgment, the threshold question is whether a genuine issue of material fact remains.[5] Thus, we must determine *546 whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6]

MATERIAL FACT IN DISPUTE/BURDEN OF PROOF
In the instant case, Gulf South moved for summary judgment because Dixie caused Federated's loss and that it had nothing to do with it. Consequently, it is not liable to Federated for indemnity.
In granting the summary judgment in Gulf South's favor, the trial court held that the boom made contact with Dixie's energized line, not Gulf South's cable; thus, Gulf South was not negligent in the underlying accident, and Mr. Jones caused his own demise. We find that the trial court could not have properly made this ruling without making improper factual determinations. For instance, Mr. Rick Brooks, Dixie's expert, contends that Mr. Jones' negligence caused his untimely death. He testified, "The accident occurred because either [sic] his careless operation or because of a malfunction within the controls that he was using[.]" Additionally, he testified regarding the height of the poles, the electrical transmission line, and the boom.
Q. Now, did this attachment ... [the Gulf South Cable Television] ... did that have anything to do with this accident?
A. I don't think so. I mean we're attempting to create a scenario where given this, that and the next thing, the primary line would be higher, therefore the accident wouldn't have occurred. But that's totally circumstantial.
First of all, I don't agree with all the numbers that have been brought forward. But, notwithstanding that, I mean, how do we know that this crane device wouldn't reach up another two feet? I mean, how do we know it didn't hit when it was coming down? It appears to me that it's at least a foot higher than the line when it made contact. So, again, it's manipulative in my estimation to try to back door or as I said take a look back and play "what if" scenarios. The basic problem here is that the guy shouldn't have been operating the boom anywhere near a power line, whether the power line was at eighteen and a half feet, twenty-one feet or twenty-six feet. That's why the accident occurred. It wasn'tit would be only circumstantial as I said before if the accident was avoided by the line being higher.
Using this testimony, Gulf South made a prima facie showing of an absence of a material fact in dispute, that being that it did not cause or contribute to Mr. Jones' death. Accordingly, the burden shifted to Federated to prove the existence of a material fact in dispute.
Professor Robert Nethken, the Jones' expert and a retired electrical engineer, stated that Dixie had a fool-proof safety system for the electrical lines' placement, that the installation of Gulf South's cable line caused the system to fall below the NESC and REA requirements, and that this caused the electrocution. Nethken, also, faulted Dixie for failing to allow room for the communication line. As such, his testimony places an issue of material fact, regarding Dixie or Gulf South's negligence and/or liability, in dispute.
In determining whether summary judgment is appropriate, our jurisprudence provides that:
[I]t is not the function of the trial court to determine or inquire into merits of issues raised, and the trial court may not weigh the conflicting evidence on a material fact. If evidence presented is subject *547 to conflicting interpretations, summary judgment is not proper.[[7]]
Also,
When the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion.[[8]]
Further,
Summary judgment may not be granted when supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradicting testimony and assessing witness credibility.[[9]]
Clearly, Mr. Brooks and Professor Nethken's testimonies reveal conflicting versions of the facts and causation of the accident, which the trial court should not have resolved on summary judgment. Rather, this complex causation issue necessitated a trial on the merits in which the trier of fact could analyze the pertinent documents and perform credibility determinations. Furthermore, a juror could have accepted either of the experts' testimonies as true. Accordingly, the trial court erred in granting summary judgment.
Notwithstanding, it, also, granted summary judgment based upon the provisions in the Dixie/Gulf South indemnity agreement. Section 19 of that contract provides, in pertinent part: "The payments and indemnities in this Section ... shall apply ... regardless of whether such damages, liabilities, payments or losses are caused, in whole or in part ... by the acts or omissions of Cooperative[.]" After reviewing this clause, the trial court found it to be unenforceable, concluding that it violated public policy, in effect, by allowing one to recover for one's own negligence. Furthermore, the court believed that it was illogical because it requires Gulf South to indemnify Dixie regardless of whether Gulf South is totally free from fault.
We find the contractual language analogous to that found in a first circuit decision for Lefort v. C & E Boat Rental.[10] In Lefort,[11] the clause provided that:
"Owner hereby agrees to fully indemnify... of and from any and all liabilities, losses, damages, and costs of whatsoever nature or kind, for personal injury or death ... arising out of or in any way directly or indirectly connected with the use of the vessel by Charterer ... whether or not caused or contributed to by the negligence, strict liability or fault of Charterer[.]"
Our brethren held:
C & E could have availed itself of an indemnity agreement that did not encompass explicit language binding itself to indemnify and defend in situations involving the strict liability and/or negligence of the platform owner which was also the charterer. However, having entered into such an agreement, C & E is bound thereby and is presumed to have consented to its contents.[[12]]
Accordingly, we find that Gulf South had a duty to carefully review the binding language *548 and, if it was objectionable, not to agree to its terms. Such is a basic tenet of contract law. We fail to see how this provision or obligation is against public policy. Thus, summary judgment was improper on this ground. We reverse the trial court's grant of it and remand for further proceedings.

CONCLUSION
Federated filed an indemnity claim against Gulf South. Gulf south moved for summary judgment, which the trial court granted on two grounds, one of which was that the indemnity provision concerning fault was against public policy. We reverse because the trial court determined causation which is a disputed factual issue not proper for resolution in a summary judgment proceeding. Furthermore, we fail to see how the provision, in question, is contrary to public policy, the second ground upon which the trial court based its grant of summary judgment.
REVERSED AND REMANDED.
AMY, J., concurs.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991).
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] National Gypsum Co. v. Ace Wholesale, Inc., 96-215, pp. 4-5 (La.App. 5 Cir. 11/26/96); 685 So.2d 306, 308, writ denied, 96-3055 (La.2/7/97); 688 So.2d 502.
[8] Willis v. Medders, 00-2507, p. 3 (La.12/8/00); 775 So.2d 1049, 1051.
[9] Citizens Bank & Trust Co. v. Mitchell, 31,435 (La.App. 2 Cir. 1/20/99); 727 So.2d 661.
[10] 00-814 (La.App. 1 Cir. 3/28/01), 795 So.2d 359, writ denied, 01-1274 (La.6/15/01); 793 So.2d 1251.
[11] 795 So.2d at 361.
[12] 795 So.2d at 364.