# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-436

KEITH ALAN PORTIE AND MELISSA PORTIE

VERSUS

FLAVIN [REALTY] INC., WENDI HEBERT,
SCOTT T. MOSELEY, CHRISTINE MOSELEY
AND CONTINENTAL CASUALTY COMPANY

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-6006-DIV D
ROBERT L. WYATT, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Marc T. Amy, Billy H. Ezell, and James T. Genovese, Judges.

REVERSED AND REMANDED.

Bryan D. Scofield
Scofield & Rivera, LLC
Post Office Box 4422
200 West Congress, Suite 700
Lafayette, Louisiana 70501
(337) 235-5353
COUNSEL FOR DEFENDANT/APPELLANT:
    Scott Moseley

**Michael G. Hodgkins**
**Veron, Bice, Palermo & Wilson LLC**
**Post Office Box 2125**
**Lake Charles, Louisiana 70602**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Keith Alan Portie and Melissa Portie**

**Emmett C. Sole**
**Paul P. Marks**
**Stockwell, Sievert, Viccellio,**
**Clements & Shaddock, L.L.P**
**Post Office Box 2900**
**Lake Charles, Louisiana 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANTS:**
**Flavin Realty, Inc. and Wendi Hebert**

**Timothy O'Dowd**
**Attorney at Law**
**921 Ryan Street, Suite D**
**Lake Charles, Louisiana 70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANT:**
**Continental Casualty Company**

**GENOVESE, Judge.**

Scott Moseley appeals the trial court's grant of summary judgment in favor of Keith and Melissa Portie (the Porties), finding that Mr. Moseley had ratified a contract for the purchase of the Portie home and casting him in judgment for $68,200 in stipulated damages and $18,113 in attorney fees pursuant to the contractual provisions contained therein. The Porties have answered the appeal relative to the trial court's award of attorney fees, seeking additional attorney fees and expenses incurred in opposing Mr. Moseley's appeal. For the following reasons, we reverse and remand.

## FACTS

The Porties owned a home in Sulphur, Louisiana. Scott Moseley was interested in purchasing a home in the Sulphur area. In furtherance thereof, Mr. Moseley retained Wendi Hebert, a real estate agent with Flavin Realty, Inc. (Flavin Realty).

Ms. Hebert showed the Portie home to Mr. Moseley. Mr. Moseley, who wished to remain anonymous, decided to make an offer to purchase the home and, in connection therewith, executed a document expressly authorizing Ms. Hebert to submit a $650,000 offer on his behalf. Following negotiations wherein Mr. Moseley was identified as the "undisclosed buyer," an agreement for the purchase of the Portie home was finalized in a typed document entitled "Counter Offer." This Counter Offer, executed by the Porties and Ms. Hebert on behalf of the "undisclosed buyer," Mr. Moseley, contained a purchase price of $682,000.

When the purchase of the home failed to come to fruition, the Porties filed suit against Mr. Moseley, Christine Pardo,[1] Ms. Hebert, Flavin Realty, and its insurer,

---

[1]The Porties asserted the same claims against Christine Pardo as those asserted against Mr. Moseley; however, Christine Pardo was subsequently dismissed from the lawsuit.

Continental Casualty Company (Continental Casualty), for breach of contract and damages. In response, Mr. Moseley filed a reconventional demand against the Porties, asserting that in the event he was found to be bound by the agreement to purchase their home, "they failed to comply with the terms of this Agreement and the Property Inspection Response Form. . . . Thus, the Agreement was null and void." Mr. Moseley also filed a cross-claim against Ms. Hebert, Flavin Realty, and Continental Casualty.

The Porties filed a Motion for Summary Judgment against Mr. Moseley, Flavin Realty, Ms. Hebert, and Continental Casualty. Relevant to their claims against Mr. Moseley, which are the subject of the present appeal, the Porties asserted that Mr. Moseley "did not complete the act of sale as required" and that:

> [t]he contract between the parties allows for the seller to choose which remedy he prefers. The sellers choose termination of the contract and damages of ten (10%) per cent of the sales price, as well as costs and fees, including reasonable attorney's fees incurred as the result of the breach of this agreement.

The trial court granted summary judgment in favor of the Porties and against Mr. Moseley, awarding the Porties $68,200, representing ten percent of the home's alleged purchase price of $682,000. Their claim for attorney fees was deferred. Additionally, the trial court denied summary judgment as to Ms. Hebert, Flavin Realty, and Continental Casualty.

Mr. Moseley filed a Motion to Reconsider with the trial court, and counsel for the Porties submitted the relevant attorney fee contract and an hourly fee worksheet to the trial court in connection with their claim for attorney fees pursuant to the contract. At the hearing on these two issues, the trial court denied Mr. Moseley's Motion to Reconsider and awarded the Porties $18,113 in attorney fees. It is from

this judgment that Mr. Moseley appeals. The Porties have filed an Answer to Appeal seeking a modification of the attorney fees awarded by the trial court as well as additional attorney fees and expenses they incurred in opposing Mr. Moseley's appeal.

## ASSIGNMENTS OF ERROR

Mr. Moseley asserts that "the District Court erred as a matter of law in granting Plaintiffs' Motion for Summary Judgment against Mr. Moseley and denying Mr. Moseley's Motion to Reconsider." In their answer to appeal, Mr. and Mrs. Portie assert that "the District Court failed to award the proper amount of attorneys' fees due and owing under the contract herein."

## LAW AND DISCUSSION

This court recently stated the following with regard to an appeal of the grant of a motion for summary judgment:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363[,] p. 3 (La. 11/29/06), 950 So.2d 544, 546, *see* [La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181[,] p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337[,] p. 7 (La. 10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424[,] p. 5 (La. 4/14/04), 870 So.2d 1002, 1006.

> *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted).

*Benniefiel v. Zurich American Ins. Co.*, 08-1416, p. 4 (La.App. 3 Cir. 5/6/09), 10 So.3d 381, 384.

Also relevant to the matter sub judice is the following cautionary language contained within the jurisprudence relative to summary judgments in certain cases:

> In determining whether summary judgment is appropriate, our jurisprudence provides that:

>> [I]t is not the function of the trial court to determine or inquire into the merits of issues raised, and the trial court may not weigh the conflicting evidence on a material fact. If evidence presented is subject to conflicting interpretations, summary judgment is not proper.

>> . . . .

> Further,

>> Summary judgment may not be granted when supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradicting testimony and assessing witness credibility.

*Johnson v. Gov't Employees Ins. Co.*, 05-476, pp. 5-6 (La.App. 3 Cir. 11/2/05), 916 So.2d 451, 454 (quoting *Federated Rural Electric Ins. Corp. v. Gulf South Cable Inc.*, 02-852, pp. 4-5 (La.App. 3 Cir. 12/11/02), 833 So.2d 544, 546-47 (footnotes omitted)). "If in evaluating the evidence, the court considered the merits, made credibility determinations, evaluated testimony, or weighed evidence, summary judgment must be reversed." *Strickland v. Doyle*, 05-11, p. 4 (La.App. 3 Cir. 4/6/05), 899 So.2d 849, 852, *writ denied*, 05-1001 (La. 6/3/05), 903 So.2d 466.

Certain facts surrounding this real estate transaction are not disputed by the parties. All parties agree that Ms. Hebert, in negotiating the purchase of the home, was acting on behalf of an "undisclosed buyer[,]" Mr. Moseley. In furtherance of maintaining his anonymity, Mr. Moseley granted Ms. Hebert written authority to negotiate on his behalf and to extend an offer of $650,000. In accordance with the written authority granted to her by Mr. Moseley, Ms. Hebert extended an offer to the

4

Porties with a purchase price of $650,000. That offer was not accepted and negotiations continued. Second, Mr. Moseley, as the undisclosed buyer, did not sign any additional document in the course of negotiations; rather, the counter offer, which was ultimately drafted with a purchase price of $682,000, was executed by the Porties along with Ms. Hebert and Flavin Realty, as agents for the undisclosed buyer.

On appeal, Mr. Moseley contends that he is not bound by the terms of the contract for the purchase of the Portie home for $682,000 on the grounds that his real estate agent, Ms. Hebert, exceeded her authority in negotiating the purchase price for the home. According to Mr. Moseley, she did not have written authority to continue negotiating nor did she have the written authority to bind Mr. Moseley for a purchase price of $682,000. Mr. Moseley asserts that "[f]urther, she had no verbal authority to do so." Mr. Moseley argues that **"there is nothing in writing from [him] authorizing [Ms.] Hebert to submit any counteroffer or to the final sales price of $682,000.00**." He concludes, therefore, that "[b]ased upon that finding alone, [he] is entitled to a dismissal of the case against him, and a summary judgment against him is inappropriate."

The record reveals that, in granting the Motion for Summary Judgment in favor of the Porties and against Mr. Moseley, the trial court found "that Mr. Moseley intended to conform to the terms of an agreement that he believed he was a party to, up to some point." The trial court expressly stated that it found "that [Mr. Moseley] had gone beyond the point of no return at that time, and, in fact, ratified the agreement that Ms. Hebert entered into on behalf of Flavin Realty and the Porties." Clearly, the trial court's ruling was not based upon a finding that Ms. Hebert possessed the requisite authority to bind Mr. Moseley; rather, it was grounded upon

5

the theory of ratification. Therefore, more precisely stated, the issue before this court is whether the trial court erred in granting summary judgment in favor of the Porties based upon its factual determination that Mr. Moseley ratified the contract to purchase the Portie home for $682,000.

Louisiana Civil Code Article 1843 (emphasis added) provides as follows:

Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.

An express act of ratification must evidence the intention to be bound by the ratified obligation.

Tacit ratification results when a person, *with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.*

Mr. Moseley argues in his brief to this court that "**the District Court ruled that Mr. Moseley ratified a contract that he had never seen**." He calls this court's attention to his deposition testimony wherein he was questioned about his knowledge of the counter offer. Mr. Moseley denied Ms. Hebert having shown that document to him, and added that "to [his] knowledge, [he] had not seen that document" until the taking of his deposition. We find this testimony of Mr. Moseley pertinent to the trial court's finding of ratification since La.Civ.Code art. 1843 requires that an individual have "knowledge" for there to be a ratification of an obligation. Additionally, expounding on the knowledge required under La.Civ.Code art. 1843, the jurisprudence states that "[r]atification which is not expressed in writing will not be presumed. The party seeking to enforce the contract must prove that the other party ratified the agreement *with full knowledge of all the facts*." *Everette v. Foxwood Properties*, 584 So.2d 1233, 1236-37 (La.App. 2 Cir. 1991) (emphasis added) (citing *Rebman v. Reed*, 335 So.2d 37 (La.App. 4 Cir. 1976), *writ denied*, 338 So.2d 699

6

(La.1976); *Bamber Contractors, Inc. v. Morrison Eng'g and Contracting Co., Inc.*, 385 So.2d 327 (La.App. 1 Cir. 1980)).

The Porties argue that the actions taken by Mr. Moseley subsequent to the execution of the counter offer support the trial court's finding of ratification. They argue, in brief, that he "proceeded to immediately exercise his rights under the contract, up to and including making a loan application for the full contract price, getting an appraisal, performing a home inspection, having an attorney, Henry Liles, do title work, and submitting a deposit" in the form of a $5,000 made payable to Flavin Realty.

In considering the particular actions which the Porties contend are sufficient to constitute acts of ratification, we first note that Mr. Moseley expressly denied that certain of these actions were taken by him. Mr. Moseley testified that he had "no idea" who chose the appraiser. Further, he testified that it was suggested to him that he obtain a home inspection. However, it was his testimony that "Ms. Hebert contacted the home inspector. [He] did not." Mr. Moseley also did not recall having seen the Property Inspection Response Form which listed items that may need repair. When questioned about the title opinion, Mr. Moseley testified that he did not see the title opinion "until after the deal was off." Additionally, there was a termite inspection done on the home, but, according to his testimony, Mr. Moseley "was not responsible for that." Although Mr. Moseley does not deny that he had knowledge that certain of the foregoing actions were taken, we find that his testimony places into question whether he had "full knowledge of all the facts." *Everrette*, 584 So.2d at 1237.

The extent of Mr. Moseley's knowledge at the time he completed the loan application also remains unclear. In his deposition testimony, Mr. Moseley provided

7

a detailed explanation of the loan application process. It was his testimony that he contacted Lee Temple at First National Bank to discuss the purchase of the home because that is where his accounts were. Mr. Moseley explained that he "didn't have to seek financing" but that he "was directed to seek financing" and "was instructed as part of the process that financing would be necessary." Mr. Moseley was adamant that he "was told that [he] had to apply for a loan." According to Mr. Moseley, he went to the bank and completed the loan application because he had been "instructed" that the loan application was required before an appraisal could be performed. Although Mr. Moseley admitted in his deposition testimony that he was aware that the loan application contained a purchase price of $682,000, it was also his testimony that when he questioned the loan officer, Mona Hastings, about the stated price, "she insisted that [he] go ahead with this."

Similarly, while it is undisputed that Mr. Moseley issued a check in the amount of $5,000 payable to Flavin Realty, his knowledge surrounding the purpose of same is unclear. Mr. Moseley testified that "[he] was told it was earnest money. [He] was told it was standard policy." However, "[he] was not told what earnest money was for." Mr. Moseley testified that he "did not want to give that amount of money to Flavin Real Estate because [he] was only making an offer." It was Mr. Moseley's understanding that he "would get that money back if there were any problems with the deal." In his words, he wrote the check "under protest." Mr. Moseley maintained that "[he] did not understand what the consequences of writing that [$]5,000-dollar check were."

In sum, Mr. Moseley's deposition and affidavit submitted in connection with the Motion for Summary Judgment suggest that it was never his intention to purchase the Portie home for $682,000. He also maintained that even after the counter offer

8

was signed by Ms. Hebert, he still did not agree to a $682,000 purchase price. In his mind, "[t]here was -- there was no deal." When Mr. Moseley was questioned about the reason he took actions subsequent to the execution of the counter offer, he testified that he "was instructed by [his] real estate people, who [he] had trust in, the bankers, who [he] had trust in."

Considering the evidence, we find that the Porties failed to establish that Mr. Moseley had knowledge of the contract that he testified he had not seen until the date of his deposition. To the contrary, his testimony supports the conclusion that he did not have full knowledge of same. Additionally, we do not find that the actions taken by Mr. Moseley subsequent to the execution of the counter offer were done with his having full knowledge of all the facts. Perhaps more importantly, we agree with Mr. Moseley that the oral reasons of the trial court resound in subjectivity. For example, the trial court stated as follows:

> But then what this [c]ourt has to determine is how convinced is it - am I - that Mr. Moseley intended to do what the plaintiffs, Mr. and Mrs. Portie, contend was their understanding? And even though this [c]ourt has listened with interest . . ., there is still no doubt in my mind that Mr. Moseley intended to conform to the terms of an agreement that he believed he was a party to, up to some point.

These comments reveal that the trial court, faced with conflicting evidence subject to different interpretations, resorted to evaluating the evidence and assessing the credibility of the witnesses; however, it is legally impermissible for a trial court, in ruling on a motion for summary judgment, to delve into matters such as motive and intent.

The deposition of Mona Hastings, Vice President of the Mortgage Lending Department at First Federal, is discussed by the Porties in their brief to this court. The Porties quote Ms. Hastings' testimony to bolster their argument that Mr. Moseley

9

ratified the contract by proceeding with the loan application process. Ironically, however, we agree with the Porties that "Mona Hastings has a completely different story" from that of Mr. Moseley. The testimony of Ms. Hastings serves only to create material and factual discrepancies, particularly as to the knowledge of Mr. Moseley. Moreover, the testimony of Ms. Hastings in no way imports any information on the subjective intentions, motive, and/or state of mind of Mr. Moseley in taking the actions surrounding the loan application.

On the issue of ratification, Mr. Moseley also argues that the second element of ratification, i.e. the acceptance of the benefits of the obligation under La.Civ. Code art. 1843, is lacking in this matter. He argues to this court that he "terminated the loan application process and refused to go forward with the act of sale. Thus, he never accepted its benefits (the home)." In light of our findings set forth above, we pretermit any discussion of whether Mr. Moseley accepted the benefits of the obligation in this case.

The Porties have filed an Answer to Appeal in this matter asserting that the trial court "failed to award the proper amount of attorneys' fees due and owing under the contract herein." They also seek attorney fees and expenses they incurred in defending Mr. Moseley's appeal. On this issue, all parties argue whether the Louisiana Residential Agreement to Buy or Sell constitutes the agreement of the parties in this transaction since it is this document which expressly contains the provision for attorney fees. However, given our reversal of the trial court's grant of summary judgment in favor of the Porties, we need not address the issue of attorney fees at either the trial court level or the appellate court level.

### DECREE

Based upon the foregoing, the judgment of the trial court granting summary

10

judgment in favor of Keith Alan and Melissa Portie against Scott Moseley, casting him in judgment for $68,200 in stipulated damages and $18,113 in attorney fees, is reversed, and this matter is remanded for further proceedings consistent herewith. Costs of this appeal are assessed to Keith Alan Portie and Melissa Portie.

**REVERSED AND REMANDED.**