STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-993
consolidated with
12-1015


MELISSA B. DUGAS

VERSUS

OFFICER LARRY THERIOT, II,
LAFAYETTE CITY POLICE DEPARTMENT
AND LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2008-2003 DIV. "D"
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Jimmie C. Peters, Billy Howard Ezell, and James T. Genovese, Judges.

Ezell, J., dissents in part and concurs in part.
Saunders, J., dissents for the reasons assigned by Judge Ezell.


REVERSED IN PART;
AFFIRMED IN PART;
AND REMANDED.

**Michael S. O'Brien**
**William L. Goode**
**The Goode Law Firm, P.L.C.**
**812 Johnston Street**
**Post Office Drawer 3366**
**Lafayette, LA 70502-3366**
**(337) 234-0600**
**COUNSEL FOR PLAINTIFF/APPELLEE/RESPONDENT:**
**Melissa B. Dugas**

**Kenneth W. Jones, Jr.**
**Lisa E. Mayer**
**Gibson-Gruenert, PLLC**
**600 Jefferson Street, Suite 600**
**Post Office Box 3663**
**Lafayette, LA 70502**
**(337) 233-9600**
**COUNSEL FOR DEFENDANTS/APPELLEES/APPLICANTS:**
**Larry Theriot, II, and**
**Lafayette City-Parish Consolidated Government**

**GENOVESE, Judge.**

In this personal injury case, the Defendants, Larry Theriot, II (Officer Theriot), and the Lafayette City-Parish Consolidated Government (LCG), appeal the trial court's grant of the motion for partial summary judgment filed by the Plaintiff, Melissa B. Dugas, on the issue of liability. Additionally, Officer Theriot and LCG seek a supervisory writ of review of the trial court's denial of their cross-motion for summary judgment. This court granted the unopposed motion to consolidate the writ with the appeal for our appellate review. For the following reasons, we reverse the judgment of the trial court granting Ms. Dugas' motion for partial summary judgment, and we deny the writ application on behalf of Officer Theriot and LCG seeking a reversal of the trial court's denial of their motion.

## FACTS AND PROCEDURAL HISTORY

On February 15, 2008, Officer Theriot, with the Lafayette City Police Department, and Ms. Dugas were involved in an automobile accident in Lafayette, Louisiana. When the accident occurred, Officer Theriot was en route to investigate a separate traffic accident. In responding to that call with emergency lights and sirens activated, Officer Theriot traveled down Johnston Street, turned left onto Cajundome Boulevard, and continued northbound toward its intersection with Congress Street. Meanwhile, Ms. Dugas was traveling westbound on Congress Street in the outside lane in the direction of Cajundome Boulevard. The collision between Ms. Dugas and Officer Theriot occurred in the intersection of Congress Street and Cajundome Boulevard when Ms. Dugas struck the front passenger side of Officer Theriot's vehicle. At the time the accident occurred, it was approximately 4:25 p.m.; it was raining; and the roadway was wet.

As a result of the accident, Ms. Dugas filed suit against Officer Theriot and LCG for injuries she allegedly sustained in the accident.[1] The parties subsequently filed cross-motions for summary judgment on the issue of liability. After taking those matters under advisement, the trial court granted Ms. Dugas' motion for partial summary judgment and denied Officer Theriot and LCG's motion for summary judgment. A judgment consistent therewith was signed by the trial court on August 8, 2012. Officer Theriot and LCG sought a supervisory writ of review of the denial of their motion for summary judgment, and they appealed the grant of Ms. Dugas' motion for partial summary judgment. This court ordered the consolidation of the writ with the appeal for oral argument and our appellate review.

## ASSIGNMENTS OF ERROR

In the appeal, Officer Theriot and LCG assert the following assignments of error:[2]

> I.    The [t]rial [c]ourt erred in granting [P]laintiff's motion for partial summary judgment on the issue of liability by holding the provisions of [La.R.S.] 32:24(B) inapplicable and failing to apply the reckless disregard standard; there was no reckless disregard.

> II.    The [t]rial [c]ourt erred in relying on the hypothetical and speculative testimony of another officer attached to [P]laintiff's Reply Brief.

> III.    The [t]rial [c]ourt erred in relying on the case of *Spears v. City of Scott*, [05-230] ([La.App.] 3 Cir. 11/2/05)[,] 915 So.2d 983[, *writ denied*, 05-2478 (La. 3/31/06), 925 So.2d 1259].

> IV.    Alternatively, the [t]rial [c]ourt erred by failing to consider that the actions of Officer Theriot were also protected

---

[1]Ms. Dugas also named the Lafayette City Police Department as a defendant; however, not being a juridical entity with the capacity to be sued, it was subsequently dismissed from the lawsuit.

[2]The assignments of error contained in the writ application are set forth and stated differently than in the appeal; however, because they substantively assert the same errors of the trial court and are encompassed within those quoted above, they are not duplicated herein.

pursuant to Louisiana's discretionary immunity statute, [La.R.S.] 9:2798.1.

V.    Alternatively, the evidence does not support the finding of 100% fault to Officer Theriot and 0% fault to [P]laintiff for this accident, where [P]laintiff did not request a decision of comparative fault issues and there exist genuine issues of material fact regarding same.

## LAW AND DISCUSSION

Our supreme court has stated the following relative to motions for summary judgment:

> Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991).  A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547.  A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751).  A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

*Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La. 7/2/12), 94 So.3d 750, 755.

However, pertinent to our review of the matter before us, we remain mindful of the following cautionary language:

> [I]t is not the function of the trial court to determine or inquire into the merits of issues raised, and the trial court may not weigh the conflicting evidence on a material fact. If evidence presented is subject to conflicting interpretations, summary judgment is not proper.
>
>         . . . .
>
> Further,

3

> Summary judgment may not be granted when supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradicting testimony and assessing witness credibility.

> *Johnson v. Gov't Employees Ins. Co.*, 05-476, pp. 5-6 (La.App. 3 Cir. 11/2/05), 916 So.2d 451, 454 (quoting *Federated Rural Elec. Ins. Corp. v. Gulf South Cable Inc.*, 02-852, pp. 4-5 (La.App. 3 Cir. 12/11/02), 833 So.2d 544, 546-47 (footnotes omitted). "If in evaluating the evidence, the court considered the merits, made credibility determinations, evaluated testimony, or weighed evidence, summary judgment must be reversed." *Strickland v. Doyle*, 05-11, p. 4 (La.App. 3 Cir. 4/6/05), 899 So.2d 849, 852, *writ denied*, 05-1001 (La. 6/3/05), 903 So.2d 466.

*Broussard v. Hertz Equip. Rental Corp.*, 09-177, pp. 6-7 (La.App. 3 Cir. 12/16/09), 27 So.3d 337, 341.

In this case, it is undisputed that the accident involving Ms. Dugas and Office Theriot occurred at approximately 4:25 p.m. at a busy, multi-lane intersection while it was raining or drizzling. Additionally, it is not disputed that Officer Theriot was responding to a call to investigate a separate major accident and was traveling with his lights and sirens activated. Finally, at no time prior to the impact did Ms. Dugas either see Officer Theriot's vehicle, or see his emergency lights, or hear the sirens.

According to Officer Theriot, as he was proceeding in a northerly direction on Cajundome Boulevard, with his lights and sirens activated, the vehicles located in the turning lane and in the northbound lane of Cajundome Boulevard "moved out of [his] way, so that [he] could approach the intersection." Because the light was red, Officer Theriot came to a stop between these vehicles. After determining that the traffic in the multiple lanes of the intersection had come to a stop and the intersection was "clear," Officer Theriot entered the intersection while the light was still red, utilizing his lights, sirens, and air horn. He testified that he was "constantly scanning left to right" as he progressed "maybe about seven or eight

car lengths" into the intersection and determined that all of the traffic had stopped. According to Officer Theriot, when he saw Ms. Dugas' vehicle, the impact was "almost instantaneous."

Meanwhile, Ms. Dugas, who was traveling westbound on Congress Street, approaching its intersection with Cajundome Boulevard, was faced with a green light. Ms. Dugas testified that she did not hear any sirens, nor did she hear an air horn. She also did not see any emergency lights. Additionally, Ms. Dugas did not observe that all other cars at the intersection were stopped. According to her testimony, at no point before the impact occurred did Ms. Dugas see Officer Theriot's vehicle.

Michelle Borel testified that she was in the outside, southbound lane on Cajundome Boulevard and that she had come to a stop at the intersection behind another vehicle. Ms. Borel first heard sirens, and then she saw Officer Theriot's vehicle as he approached the intersection. She recalled that "[t]he cars at the intersection both ways, Congress and Cajundome Boulevard, were all stopped." Ms. Borel stated that Officer Theriot "slowed down" before he entered the intersection; however, she had "no idea whether he came to a complete stop." In describing how Officer Theriot advanced through the intersection, she explained that "[o]nce he was in the intersection, he was moving. He did not stop at each stage throughout the intersection." According to Ms. Borel, once in the intersection, Officer Theriot "appeared to be accelerating." Ms. Borel could not explain why the Dugas vehicle did not stop at the intersection as the other vehicles had done. It was her testimony that "even if whoever was driving the [Dugas] vehicle couldn't here [sic], there were enough visual signs to tell her something was going on, and [she] obviously didn't look." These signs included all cars at the intersection being stopped, including those vehicles that had a green light, and,

5

in her opinion, the driver of the Dugas vehicle "should have looked around to her surroundings to see why are these cars stopped."

James Falterman was stopped at the red light in the southbound, left turning lane of Cajundome Boulevard. Mr. Falterman testified that Officer Theriot had his lights and sirens on; however, this witness testified that he could not remember if Officer Theriot came to a complete stop before entering the intersection.

John Chitwood was southbound on Cajundome Boulevard and was stopped in the turning lane at the intersection behind Mr. Falterman. He recalled that there were one or two cars in front of him. According to this witness, Officer Theriot had his lights and sirens on. Mr. Chitwood testified that Officer Theriot came to a stop prior to entering the intersection. After stopping, Officer Theriot proceeded through the intersection at "a normal rate of speed."

Gordon Kirkman was stopped in the inside, southbound lane of Cajundome Boulevard. Mr. Kirkman observed Officer Theriot approaching the intersection from the opposite direction on Cajundome Boulevard with his lights and sirens on. He testified that Officer Theriot passed between the two lanes of cars that were stopped on Cajundome Boulevard, and then he "proceeded out, and stopped again, and then proceeded across." It was his recollection that Officer Theriot "stopped at the intersection, proceeded forward about one car's length, and then stopped a second time. [Officer Theriot] then proceeded across the intersection as if it was clear." Mr. Kirkman estimated Officer Theriot's speed at twenty to twenty-five miles per hour.

Expert opinions were also introduced in support of the respective motions. Dean Tekell, Ms. Dugas' expert in accident reconstruction, determined that Officer Theriot accelerated from his stopped position to the point of impact, attaining speeds of seventeen to twenty-three miles per hour. In Mr. Tekell's opinion,

Officer Theriot did not inch across the intersection or stop prior to entering Ms. Dugas' lane of travel. Based upon Ms. Dugas' speed of forty-five miles per hour, he concluded that Officer Theriot and Ms. Dugas had approximately one second to see one another prior to impact.

Joseph Blaschke, a licensed professional engineer offering consultation in accident reconstruction, testified as an expert for the defense. Mr. Blaschke opined that "[t]here is no doubt that the police vehicle had stopped before entering the intersection and was then accelerating through the intersection at a relatively slow speed (according to the testimonies of the three witnesses)." He concluded that Ms. Dugas was traveling at forty-five miles per hour, and Officer Theriot was traveling at a speed of nineteen to twenty-three miles per hour. Mr. Blaschke opined that Ms. Dugas "failed to respond to the visual information presented to her[,]" namely, the other vehicles that were stopped at the intersection despite their having a green light. In his opinion, "Ms. Dugas was obviously inattentive to the conditions that existed at the intersection" and "[a] driver who is exercising appropriate caution should have responded to that unusual condition."

Considering the duties of the respective drivers, we first note that La.R.S. 32:125 provides that the driver of an authorized emergency vehicle is not relieved of the duty to drive with due regard for the safety of all persons using the highway. Officer Theriot knew he was proceeding against a red signal at a very busy intersection during one of the busiest times of the day. It is not disputed that he was traveling with his emergency lights and sirens on and that he stopped at least once at the intersection, according to the witnesses. Whether he stopped more than once, whether he inched out into the intersection, and to what degree he was assessing the situation are all matters of uncertainty and subject to dispute. One

7

witness described his progress as being a "normal rate of speed[,]" while others said he was "accelerating" through the intersection.

On the other hand, Ms. Dugas also had a duty to yield the right of way to Officer Theriot pursuant to La.R.S. 32:125, which requires the drivers of vehicles to yield the right-of-way to an authorized emergency vehicle making use of audible or visual signals. While the other vehicles at the intersection heeded to the emergency lights, sirens, and air horn, and came to a stop at the intersection despite having a green light, Ms. Dugas testified that she did not see Officer Theriot's emergency lights and that she did not hear the sirens or air horn. Notably, she was traveling through this busy, multi-lane intersection, on wet roads, at the maximum speed of forty-five miles per hour, and she did not notice that the other vehicles were all stopped, nor did she take evasive action.

In considering the cross-motions for summary judgment, the trial court was presented with differing testimony of the lay witnesses as to the facts in this case. The trial court was also presented with differing expert opinions on the issue of fault. The trial court also heavily considered the testimony of Sergeant Lance Leblanc, the investigating officer. Notably, Sergeant Leblanc was not present at the time of this accident, nor was he testifying as an expert witness; yet, the trial court was "impressed" with, and inappropriately relied upon, Sergeant Leblanc's testimony of how he would have proceeded through the intersection. Given this, the trial court necessarily weighed the evidence and evaluated the credibility of the witnesses. As stated above, "[i]f in evaluating the evidence, the court considered the merits, made credibility determinations, evaluated testimony, or weighed evidence, summary judgment must be reversed." *Broussard*, 27 So.3d at 341 (quoting *Strickland*, 899 So.2d at 852).

8

Finally, we note that the trial court's reliance on *Spears v. City of Scott*, 05-230 (La.App. 3 Cir. 11/2/05), 915 So.2d 983, *writ denied*, 05-2478 (La. 3/31/06), 925 So.2d 1259, is discussed at length by both parties in support of their respective positions. Acknowledging same, we find *Spears* to be readily distinguishable from this matter for two reasons. *Spears* was decided after a trial on the merits and not on a motion for summary judgment. Secondly, the evidence in *Spears* was that the officer "punched it" through the intersection. *Spears*, 915 So.2d at 988. While the facts in the instant case are in dispute, there is no evidence in this record that Officer Theriot "punched it" through the intersection. Accordingly, *Spears* is readily distinguishable and not dispositive of the issues presently before us.

Our de novo review of the record reveals questions of material fact on the issue of the comparative fault, vel non, of Officer Theriot and Ms. Dugas and also on the issue of discretionary immunity. Therefore, we find that the trial court erred in granting Ms. Dugas' motion for partial summary judgment on the issue of liability. We further find that the trial court was legally correct in denying the motion for summary judgment filed by Officer Theriot and LCG.

## DECREE

Based upon the foregoing, we reverse the judgment of the trial court granting the motion for partial summary judgment in favor of Melissa Dugas. Additionally, we deny the writ application on behalf of Officer Theriot and Lafayette City-Parish Consolidated Government seeking a reversal of the trial court's denial of their motion for summary judgment. The $2,046.59 court costs of this appeal are assessed equally against the respective parties. Accordingly, this case is remanded to the trial court for further proceedings consistent herewith.

**REVERSED IN PART; AFFIRMED IN PART;**
**AND REMANDED.**

MELISSA B. DUGAS

VERSUS

OFFICER LARRY THERIOT, II,
LAFAYETTYE CITY POLICE DEPARTMENT
AND LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT

**EZELL, Judge, dissenting in part and concurring in part.**

I dissent from the majority's decision to reverse the trial court's judgment granting partial summary judgment in favor of Ms. Dugas. I concur with the majority's denial of Officer Theriot's and LCG's writ application.

This intersection of Congress Street and Cajundome Boulevard is a busy, multi-lane intersection at any time of the day. The accident between Officer Theriot and Ms. Dugas occurred on a Friday at 4:25 p.m. Traffic at this time would be extremely congested. Officer Theriot did stop before entering the intersection and engaged his lights and air horn. However, Officer Theriot never made any efforts to stop again and check traffic, even though he knew he was proceeding against a red light. Both experts testified that Officer Theriot got up to a speed of twenty-three miles per hour as he crossed the intersection. This testimony was supported by eyewitness testimony that Officer Theriot appeared to be accelerating through the intersection. Ms. Dugas was proceeding with a green light. Ms. Dugas did not see any emergency lights or hear a siren. Ms. Dugas admitted that vehicles in the left-turning lane were stopped. However, it is reasonable to assume that they were waiting for oncoming traffic to clear before turning left. This would not impede Ms. Dugas from proceeding directly across the intersection under normal circumstances.

While Officer Theriot testified he was continuously monitoring traffic, it is clear that the vision of other drivers would be obscured by stopped vehicles. Also, for the same reason, a vehicle approaching the intersection would not have a clear view of the entire intersection. Officer Theriot was in the superior position to know that he was entering the intersection on a red light, creating a hazardous condition. By continuing to accelerate, he gave up the chance to stop and avoid an accident with any car that might not see his car or lights, or hear his siren. Therefore, I agree with the trial court that there is no question of material fact and Ms. Dugas is entitled to partial summary judgment on the issue of liability.